UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Mark Falk |
| | : | |
| v. | : | Mag. No. 17-3586 |
| | : | |
| YASEEN SALIH; and | : | |
| CHAD BROWN | : | **CRIMINAL COMPLAINT** |
| | : | |

I, Evan Nadjavestky, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Postal Inspector with the United States Postal Inspection Service, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

Evan Nadjavestky, Postal Inspector
United States Postal Inspector,
United States Postal Inspection Service

Sworn to before me and subscribed in my presence,
May 18, 2017 in Essex County, New Jersey

HONORABLE MARK FALK

UNITED STATES MAGISTRATE JUDGE
Signature of Judicial Officer

1

## ATTACHMENT A

### Count 1
### (Conspiracy to Commit Bank Fraud)

From in or about November 2016 through the present, in the District of New Jersey, and elsewhere, defendants

YASEEN SALIH, and
CHAD BROWN

did knowingly and intentionally conspire and agree with others to execute a scheme and artifice to defraud financial institutions, as defined in Title 18, United States Code, Section 20, namely, Victim Bank 1 and Victim Bank 2, whose deposits were insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of such financial institutions, by means of false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

In violation of Title 18, United States Code, Section 1349.

## ATTACHMENT B

I, Evan Nadjavestky, am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have knowledge about the facts set forth below from my involvement in the investigation, my review of reports, documents, pictures, witness interviews, and discussions with other law enforcement officials. The affidavit is submitted for a limited purpose, and I have not set forth each and every fact that I know concerning this investigation. All statements described herein are relayed in substance and in part.

1.     At all times relevant to this complaint, defendants YASEEN SALIH ("SALIH") and CHAD BROWN ("BROWN") were residents of New Jersey. "Victim Bank 1" and "Victim Bank 2" were federally insured financial institutions, as that term is defined in 18 U.S.C. § 20.

2.     Beginning at least as early as in or about September 2015 through the present, defendants SALIH, BROWN, and others, known and unknown have participated in a bank fraud conspiracy designed to obtain money from Victim Bank 1 and Victim Bank 2 on the basis of false and fraudulent pretenses and representations. To date, the losses associated with the conspiracy exceed approximately $500,000.

3.     The investigation into the conspiracy has revealed that the scheme generally unfolded in three steps. First, members of the conspiracy obtained information to actual bank accounts (the "subject accounts") belonging to customers of Victim Bank 1 and Victim Bank 2, including information relating to account numbers, personal identification numbers, and personal information of the account holders such as name and address. In some case, members of the conspiracy also obtained debit cards. In some instances, SALIH and BROWN approached account owners personally and requested access to the subject accounts.

4.     Second, a member of the conspiracy, often an unknown woman, posed as a bank employee and called a teller at the Victim Bank. The caller provided the teller with information sufficient to convince the teller that the caller was, in fact, an employee of the Victim Bank, and then convinced the teller to credit funds into the subject accounts. For example, in one version of the scheme, the caller convinced the teller that a power outage had occurred and as a result, certain funds that should have been credited to the account had not been credited to the account. In another version of the scheme, the caller convinced the teller that a freeze placed on an account had been lifted and that certain funds should be credited to the account. In another version of the scheme, the caller simply used her fraudulent status as a bank employee to request that the teller credit the account.

3

5.      Third, once funds were credited into the subject accounts, members of the conspiracy then used debit cards associated with the subject accounts to obtain the fraudulently credited funds. In some instances, members of the conspiracy withdrew funds from the subject accounts by withdrawing money from Automated Teller Machines at Victim Bank branch locations. In other instances, members of the conspiracy used debit cards associated with the subject accounts to purchase Postal Money Orders to conceal the source of the funds.

6.      For example, on or about June 17, 2016, a member of the conspiracy called a teller at Victim Bank 2. The caller told the teller that the caller was from Victim Bank 2's back office, and the caller requested that Victim Bank 2 provide a credit to eight subject accounts. The teller believed that the caller was an employee of Victim Bank 2's back office, and credited the subject accounts with approximately $24,000. The teller made the first credit to a subject account at approximately 5:22 p.m.

7.      On the same day, at approximately 5:27 p.m., minutes after the teller first credited a subject account, defendants SALIH and BROWN began using debit cards associated with the subject accounts to purchase Postal Money Orders from a United States Post Office in Montclair, New Jersey. At the same time, Post Office security cameras captured SALIH and BROWN in the Post Office. In total, on or about June 17, 2016, SALIH, BROWN, and others known and unknown obtained Postal Money Orders with funds from the subject accounts in the total amount of approximately $17,078. Over the course of the conspiracy, defendants SALIH and BROWN have obtained funds associated with the fraudulently credited subject account on dozens of occasions.

8.      To date, at least 70 Postal Money Orders have been purchased with subject account debit cards, and many of those Postal Money Orders were determined to have been subsequently cashed at a check cashing location in Orange, New Jersey. Photographs from the store's surveillance system showed defendant SALIH cashing Postal Money Orders. Between in or about December 2015 and the present, defendant SALIH cashed more than $180,000 in Postal Money Orders at the Orange, New Jersey check cashing location alone.